**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch**

Civil Action No. 10-cv-1581-RPM

DALE GROSS,

    Plaintiff,

    v.

PROGRESSIVE THERAPY SYSTEMS, P.C., and
PETER BRIGGS,

    Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

Dale Gross was classified as an S-4 sex offender by the Colorado Department of Corrections ("DOC") when he entered prison in 2000, even though he had not been convicted of a sex offense. His court challenges to that classification were rejected. Gross was released from prison in August 2008 and, pursuant to his sentence, was subject to five years of mandatory parole. Gross was required to participate in offense-specific mental health treatment as a condition of his parole.

Treatment for persons classified as sex offenders is regulated by the Sex Offender Management Board ("SOMB"), a state entity that was formed within the Colorado Department of Public Safety pursuant to Colorado law. *See* Colo. Rev. Stat. § 16-11.7-103. The SOMB has promulgated Standards and Guidelines for the Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders ("SOMB Standards").

SOMB Standards Section 3.500 provides rules for managing sex offenders who are in denial about their offense, and recognizes three categories of denial based on severity. An offender in Level 3 Severe Denial is an offender "who den[ies] committing the current offense and refuse[s] to acknowledge responsibility for even remotely similar behaviors." [Doc. 111, Appx. 1 at 82.] When a sex offender on parole is deemed to be in Level 3 Severe Denial, the SOMB requires that the offender be placed in "Denier Intervention." [*Id.*] Such intervention is limited to three months. An offender who makes sufficient progress during that time may be referred into offense-specific treatment, whereas an offender who does not "shall be terminated from treatment and (parole) revocation proceedings should be initiated" by the DOC. [*Id.* at 83.]

Defendant PTS is a for-profit, professional corporation that provides treatment for sex offenders pursuant to a contract with the State of Colorado. The state pays PTS according to the services it renders. PTS and its professional staff must provide treatment that adheres to the SOMB Standards. [*Id.* at 21.]

In August 2008, Jennifer Cavillo, Gross' parole officer, referred him to PTS to assess his amenability to treatment. The PTS intake clinician concluded that Gross suffered from Level 3 Severe Denial after reviewing his case file and interviewing him. Accordingly, the clinician placed Gross in Denier Intervention, as required by Section 3.530 of the SOMB Standards.

Gross began Denier Intervention on September 3, 2008. Peter Briggs, a PTS clinical staff member, led the program. Over the next two months, Gross continued to deny any wrongdoing, portrayed himself as a victim, and remained adamant that all sexual contact with the purported victim was consensual. A polygraph examination Gross submitted to in

October concerning his conduct rated as "deceptive." He remained in Denier Intervention until November 6, 2008, when, during a treatment session, he for the first time accepted the view that the woman may have felt coerced. Briggs then adjusted Gross' treatment program to reflect Gross' potential decrease in denial.

Though Gross had been in Denier Intervention for the maximum of three months by December 2008, PTS delayed discharging him, apparently in the belief that he would eventually make progress. Gross claims that he went to then-Governor Ritter's office twice in December 2008 to complain that he was being required to admit to a sexual assault as a condition of his parole. According to Gross, Briggs thereafter taunted Gross with comments such as "how's the Governor doing" during group therapy sessions, which prompted Gross to file a complaint against Briggs with the Department of Regulatory Agencies ("DORA").

PTS discharged Gross from treatment on January 19, 2009. According to Briggs:

> [Gross'] discharge was mandated by the SOMB Standards because he made little or no progress (and often times [sic] regressed) during his five months of treatment, demonstrated that he was not amendable [sic] to treatment and had remained in Denial Intervention for more than the three month period allowed under the SOMB Standards.

[Doc. 111, Appx. 2 at 5.]

Briggs informed Jennifer Cavillo by letter that Gross' treatment was terminated. One week later, Cavillo filed a revocation complaint against Gross and initiated revocation proceedings. Plaintiff's parole was revoked and he was returned to prison shortly thereafter.

Gross filed this civil action under 42 U.S.C. § 1983, claiming that Defendants PTS and Briggs violated the First, Fifth and Fourteenth Amendments by discharging him from treatment, resulting in the revocation of his parole. Defendants have moved for summary

judgment and Plaintiff's counsel seeks discovery of additional information under Federal Rule of Civil Procedure 56(d).

The initial issue is the Defendants' assertion that they are not state actors subject to suit under Section 1983, which provides a remedy for federal constitutional and statutory deprivations by a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983. "The ultimate issue in determining whether a person is subject to suit under § 1983 is whether the alleged infringement of federal rights is fairly attributable to the state." *Tarabishi v. McAlester Regional Hosp.*, 827 F.2d 648, 651 (10th Cir. 1987). Where a litigant seeks to hold a private actor accountable as a state actor for constitutional deprivations, the Tenth Circuit has "applied various analyses and referred to them as the 'nexus test,' the 'public function test,' the 'joint action test,' and the 'symbiotic relationship test.'" *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013). This case is analyzed under the symbiotic relationship test.

The symbiotic relationship test requires a plaintiff to show that the state has so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity. *Id.* at 778. *Milonas v. Williams*, 691 F.2d 931 (10th Cir. 1982), is instructive. There, the Tenth Circuit held that a private school for behaviorally challenged boys was a state actor on the basis of a symbiotic relationship, because: (1) the state had the authority to unilaterally place students in the school; (2) the school received substantial government financing (in 1979, for example, it received $629,917 in state funds, which amounted to 33.9 percent of its total annual funding); (3) the state and the school had detailed contracts governing their relationship; and (4) the state extensively regulated the school's educational program. *See id.* at 939-40.

Here, while the DOC is not authorized to unilaterally place offenders in the PTS program, the other *Milonas* factors are present. The record does not show what percentage of PTS' funding comes from the state, but the Court can reasonably infer that it is substantial, given PTS' status as an SOMB-approved treatment provider. In addition, the SOMB and PTS have what can be fairly described as a "detailed" contract governing their relationship, particularly because it requires PTS to fully adhere to the SOMB Standards. And the Standards severely restrict the discretion the Defendants have in evaluating and providing treatment to parolees classified as sex offenders. Plaintiff's experience is a prime example. He was evaluated by a PTS clinician according to SOMB Standards for evaluations. [*See* Doc. 111, Appx. 1 at 57-70.] The clinician determined that Gross was in "Level 3 Severe Denial," a clinical term specifically defined by the SOMB Standards as "[denying] committing the current offense and [refusing] to acknowledge responsibility for even remotely similar behaviors." [*Id.* at 82.] As a consequence of Gross' Level 3 Severe Denial designation, the SOMB Standards required that he be placed in Denier Intervention before proceeding to offense-specific treatment. [*See id.*] The SOMB Standards defined progress in Denier Intervention—"decreased resistance to treatment, decreased defensiveness and denial, and increased accountability for offense behavior," [*id.* at 83]—and required that sufficient progress be made within three months [*id.* at 82]. Gross did not make sufficient progress within three months, and so, in Briggs' own words, Gross' "discharge was mandated by the SOMB Standards . . . ." [Doc. 111, Appx. 2 at 5.] That is not just heavy, general regulation of PTS by the SOMB; that is near-total control—control, importantly, over the specific conduct Gross complains of here. For these reasons, the Court concludes that a symbiotic relationship exists between Defendants and the SOMB. *Cf. Wittner*, 720

5

F.3d at 779 (no symbiotic relationship between state and private hospital because no evidence that state extensively participated in patient care, drew up detailed contracts for patient care, or dictated medical program). Accordingly, Defendants are state actors who acted under color of state law for the purposes of 42 U.S.C. § 1983.

Plaintiff's Fifth Amendment claim is premised on the theory that PTS discharged him from treatment because he refused to admit to committing a sexual offense. This theory suffers from factual and legal deficiencies. First, the record does not show that PTS required Gross to acknowledge that he committed a sexual offense, or that it terminated his treatment because he refused to do so. Rather, PTS wanted Gross to take responsibility for his abusive and violent behavior that resulted in his conviction for multiple crimes, and for what it considered to be his sexual aggression – not illegal, but not appropriate – towards his ex-girlfriend. And yet Gross presented himself as a victim throughout his five months in PTS' program, which is what led to his ultimate termination from treatment. His unsupported assertions and mischaracterizations are insufficient to genuinely dispute the competent evidence in the record.

Second, to establish a Fifth Amendment claim, Plaintiff must show that: (1) the statements desired by PTS carried the risk of incarceration; and (2) the penalty he suffered amounted to compulsion. *See Doe v. Heil*, --- Fed. Appx. ----, 2013 WL 4504772, at *3 n.4. (10th Cir. Aug. 26, 2013). Because Plaintiff was acquitted of the sex offense for which he was charged, any statement he may have been required to give carried no risk of incarceration because the state would have been prohibited from re-trying him under the Fifth Amendment Double Jeopardy Clause.

For these reasons, Plaintiff's Fifth Amendment claim fails.

Plaintiff also brings a First Amendment retaliation claim, which requires him to show that: (1) he engaged in constitutionally protected activity; (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the government's actions were "substantially motivated" as a response to his constitutionally protected conduct. *See Nielander v. Bd. of County Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). Substantial motivation requires a plaintiff to show that "but for the retaliatory motive, the incident to which he refers . . . would not have taken place." *Dawson v. Johnson*, 266 Fed. Appx. 713, 716 (10th Cir. 2008) (citation omitted). A plaintiff's subjective belief of retaliation is not enough; rather, the plaintiff must establish "specific facts" showing that he was retaliated against. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

Assuming Gross can establish the first two elements of his First Amendment claim, he nonetheless cannot sustain the third. Gross maintains that Briggs terminated his treatment in retaliation for seeking redress from the Governor and filing a complaint against Briggs with DORA. Those allegations are not supported by record evidence—not even a signed affidavit from Gross. Gross simply relies on his Second Amended Complaint. At the summary judgment stage, that will not do. *See, e.g., Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996) (" [T]he nonmovant may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."). The record shows that PTS discharged Gross because he failed to progress in treatment, and because he was aggressive and hostile towards PTS staff and other patients. Given those legitimate reasons for discharging Gross, he cannot establish that, had

he not engaged in protected speech, PTS would not have terminated his treatment. Accordingly, Plaintiff's First Amendment claim fails.

Plaintiff also asserts that Briggs and PTS wrongfully discharged him from treatment, and therefore are responsible for the Parole Board's decision to revoke his parole and send him back to prison. Plaintiff appears to assert these claims under the Fourth Amendment (unlawful seizure), and the Fourteenth Amendment (insufficient process). Section 1983 requires a plaintiff to prove that the defendant caused his or her constitutional injury. *See* 42 U.S.C. § 1983. PTS and Mr. Briggs played no role whatsoever in Gross' parole: they did not set its conditions, they did not enforce it, and they did not revoke it. The undisputed evidence shows that, when PTS and Briggs discharged Gross from treatment, Briggs informed Jennifer Cavillo, Gross' parole officer, of the discharge. From there, Cavillo independently recommended that Gross' parole be revoked, and the Parole Board then independently adopted her recommendation. PTS and Briggs' conduct is too attenuated from Gross' parole revocation for a rational juror to conclude that PTS and Briggs were the cause of it. Accordingly, Plaintiff's claim fails.

Finally, Plaintiff argues that discovery is necessary to investigate certain fact questions related to his constitutional claims. To resist summary judgment under Federal Rule of Civil Procedure 56(d), "the party must demonstrate precisely how additional discovery will lead to a genuine issue of material fact." *Ben Ezra, Weinstein & Co., Inc., v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000) (citation omitted). Plaintiff recites a catalog of potential questions he would like Defendants and state officials to answer, but while some of those questions may be relevant to the circumstances surrounding this lawsuit, Plaintiff makes no attempt to demonstrate how discovery will lead to an issue of fact that is

genuine or material. The SOMB waiver provisions raised by Plaintiff were first added to the SOMB Standards in 2011, and in any event, do not apply to offenders in severe denial. Whether or not PTS properly classified Gross as a Level 3 severe denier, and upon what basis, are immaterial to his constitutional claims, which do not challenge that classification. The same goes for whether Gross was actually in denial. Finally, Gross argues that he needs the chance to depose attendees of PTS group therapy sessions who will allegedly testify that Briggs taunted Gross about Gross' decision to seek redress from the Governor. Even assuming Gross could obtain such testimony, it would be heavily outweighed by other undisputed evidence showing that PTS terminated Gross from treatment because he was not amenable to it, and because he was hostile and disruptive. Thus, it is not material to Gross' First Amendment retaliation claim.

Upon the foregoing, it is

ORDERED that Defendants' Motion for Summary Judgment is granted. The Clerk shall enter judgment for Defendants, dismissing all of Plaintiff's claims and awarding costs.

Dated: September 10, 2013

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch
Senior District Judge